IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TROY RAYNARD ALEXANDER, | ) | 1:15CR103-1 |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is before the Court on a Motion to Suppress [Doc. # 17] filed by Defendant Troy Raynard Alexander ("Defendant"). Defendant was indicted on March 30, 2015 on four counts, namely firearm possession by a felon, possession of a stolen firearm, distribution of a controlled substance (cocaine hydrochloride), and possession of a firearm in furtherance of a drug trafficking crime. [Doc. #1]. On May 22, 2015, Defendant moved to suppress all evidence resulting from the search conducted on April 10, 2015 of 400 Saint Joseph Street, Kannapolis, North Carolina [hereinafter 400 Saint Joseph Street]. [Doc. #17]. In a superseding indictment dated July 27, 2015, Defendant was indicted on eight counts, namely two counts of firearm possession by a felon, one count of possession of a stolen firearm, two counts of distribution of a controlled substance (one count alleging cocaine hydrochloride and the other alleging cocaine base), two counts of possession of a firearm in furtherance of a drug trafficking crime, and one count of maintaining a drug-involved premises. [Doc. #20]. The Government filed

a response opposing Defendant's Motion to Suppress on August 28, 2015. [Doc. #24].

The Court held a hearing on the Motion to Suppress on September 9, 2015. At the conclusion of the hearing, the Court informed the parties that an Order would be forthcoming concerning its decision as to Defendant's Motion to Suppress. For the reasons discussed herein, the Court will deny Defendant's Motion to Suppress.

I. BACKGROUND

Defendant argues that the warrant authorizing the search of 400 Saint Joseph Street was not supported by facts sufficient to establish probable cause. The Government argues that the warrant was supported by facts sufficient to establish probable cause. In the alternative, the Government argues that even if the warrant was invalid, the evidence should be admitted under the good faith exception established by United States v. Leon, 468 U.S. 897, 926, 104 S. Ct. 3405, 3422, 82 L. Ed. 2d 677 (1984).

The application for the warrant at issue was based upon the affidavit of Investigator T.M. Roth, a law enforcement officer in North Carolina for more than 20 years. Investigator Roth had extensive training and experience regarding investigations of violations of controlled substance laws. In his application, Investigator Roth explained the events which led to the application for a warrant to search 400 Saint Joseph Street—the premises in question. According to Investigator Roth's affidavit, the investigation began with the theft of several weapons from the residence of David Rigsbee and Tonya Ledbetter on July 26, 2014. Shortly thereafter, Phelan Calzado was arrested and found to have two of the stolen guns. Jahann Crowl, Calzado's significant other, was interviewed and stated that Ledbetter and Calzado had

stolen the guns and sold them to Defendant Alexander for cocaine. Calzado was later interviewed and stated that Defendant's girlfriend (whose name he thought was either "Tasha" or "Tashia") had brought a van to Calzado and Crowl's home on July 26, 2014 and that the stolen guns had been loaded into the back of the van. An investigation of call and cell phone records for all parties involved, including Defendant, revealed that a phone that Defendant had used on the evening of the transaction was registered to Tashia Steele of 801 Margate Avenue in Kannapolis.[1]

Investigator Roth testified at the hearing that, based upon the relationship between Defendant and Tashia Steele, investigators examined the whereabouts of both Defendant and Steele. In his warrant application, Investigator Roth explained that the investigation had revealed numerous addresses associated with Tashia Steele. Division of Motor Vehicles and T-Mobile records showed Tashia Steele's address to be 801 Margate Avenue. The Kannapolis Water Department showed that Steele had a water bill in her name at 541 Bostian Avenue, Kannapolis. Finally, an April 7, 2015 Accurint[2] search revealed that Tashia Steele may have been living at 400 Saint Joseph Street. A DMV records search revealed that Defendant had no vehicles registered in his name while Steele had five vehicles registered in her name. Tashia

---

[1] The warrant application did not specify the context of Defendant's phone use that evening. Instead, the application only stated that "investigators obtained call detail records and cell site information for the phones of all involved parties. It was determined that the cell phone used by Troy Alexander on the night in question was registered to Tashia Steele . . . ." [Doc. #24-1 at 7].

[2] Accurint is a LexisNexis service which covers a broad range of public records that help identify individuals' assets, addresses, relatives, and business associates. Accurint for Law Enforcement, LexisNexis, http://www.lexisnexis.com/risk/products/government/accurint-le.aspx (last visited Sept. 21, 2015).

Steele also worked for a medical company and had been issued a van registered in that company's name. On April 7, 2015, two days before Investigator Roth applied for the search warrant at issue, the medical company's van was found parked at 400 Saint Joseph Street.

As part of their investigation, officers conducted a "trash pull" of 400 Saint Joseph Street on April 8, 2015. At the hearing, Investigator Roth testified that he directed two public service workers to collect the trash cans that had been placed outside 400 Saint Joseph Street for normal garbage collection. Investigator Roth observed the workers collect the trash cans, replace them with new trash cans, and take the collected cans directly to the Kannapolis Police Department. In his warrant application, Investigator Roth described the items he found in the trash pull and their significance to him:

1. Sixty-six (66) clear plastic sandwich bags that were missing the corners of the bags. . . . [T]hese particular bags are significant because the missing corners of the plastic bags are often used to package illegal narcotics such as cocaine or marijuana.

2. One plastic bag was found to contain an off-white residue substance, which through this Affiant's training and experience found it to be consistent with being cocaine. This affiant conducted a field test on the substance . . . . [which] produced a positive result for cocaine.

3. Another plastic bag was found to contained [sic] a straight edge razor that had a blackish brown tar type residue on the blade . . . consistent with being an item used to cut through several layers of tape that is often found wrapped around a brick/kilo of cocaine or marijuana.

4. A large empty 16oz plastic bottle of GNC Inositol Powder [a dietary supplement]. . . . [T]his particular substance is significant because it is used as an additive to increase the amount of product to be repackaged and sold.

5. Large wads of clear plastic wrapping material . . . consistent with packaging material used to bundle kilos of cocaine and/or pounds of

4

marijuana with.

[Doc. #24-1 at 7-8].[3] On April 9, 2015, Investigator Roth spoke with Kannapolis City Employee Ginger Overcash regarding who was responsible for the water service at 400 Saint Joseph Street. Overcash stated that the city's records indicated that "Debra Carla Alexander," a 54-year-old woman, was responsible for the water service at 400 Saint Joseph Street.

Based upon this information, Investigator Roth applied for the search warrant on April 9, 2015 and the magistrate issued the warrant the same day. The search warrant was executed on April 10, 2015. According to the Government's response, the evidence seized included "$39,000 in currency, . . . two kilo wrappers, several scales, cocaine, packaging, crack cocaine 'cooking ingredients,' multiple firearms and ammunition—including several from the July 26, 2014 theft—drug ledgers and other items seized pursuant to the search." [Doc. #24 at 6].[4]

II.  DISCUSSION

    A.    Substantial Basis for the Magistrate's Finding of Probable Cause

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be

---

[3] Investigator Roth also testified that an empty box of sandwich bags was found as a result of the trash pull. However, this information was not included in the warrant application. [See Doc. #24-1 at 7-8].

[4] The evidence actually discovered from the search, however, is irrelevant for purposes of reviewing the magistrate's finding of probable cause. See United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996) ("[A] reviewing court must consider only the information presented to the magistrate who issued the warrant.").

5

seized." U.S. Const. amend. IV. Whether probable cause exists is determined by a neutral and detached magistrate. Johnson v. United States, 333 U.S. 10, 14, 68 S. Ct. 367, 369, 92 L. Ed. 436 (1948). Searches based upon a warrant unsupported by probable cause are unconstitutional unless the police could have acted in good faith in relying upon the warrant. United States v. Wilhelm, 80 F.3d 116, 123 (4th Cir. 1996). Evidence collected in violation of the Fourth Amendment must be suppressed.

Whether the facts alleged in an affidavit are sufficient to establish probable cause depends upon a "'totality-of-the-circumstances' analysis rooted in common sense." United States v. Montieth, 662 F.3d 660, 664 (4th Cir. 2011) (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983)). "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." Maryland v. Pringle, 540 U.S. 366, 371, 124 S. Ct. 795, 800, 157 L. Ed. 2d 769 (2003).

However, "the task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate judge's decision to issue the warrant." Massachusetts v. Upton, 466 U.S. 727, 728, 104 S. Ct. 2085, 2085, 80 L. Ed. 2d 721 (1984) (per curiam). Consequently, "a magistrate's determination of probable cause should be paid great deference by reviewing courts." United States v. Clyburn, 24 F.3d 613, 617 (4th Cir. 1994) (internal quotation marks omitted) (quoting Gates, 462 U.S. at 236, 103 S. Ct. at 2331). The reviewing court may consider "only the information presented to the magistrate who issued the warrant." United States v.

6

Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996).

The magistrate had the following notable information before him in the warrant application:

1. Defendant was suspected of having sold cocaine;
2. Defendant's girlfriend, Tashia Steele, was suspected of having assisted with a cocaine sale by collecting payment for Defendant in the form of stolen guns;
3. Tashia Steele or Debra Carla Alexander, a person with the same last name as Defendant, or both may have resided at 400 Saint Joseph Street, as evidenced by the Accurint search linking Steele to the residence, the presence at the residence of the medical company van known to be in the possession of Steele, and the water bill for the residence being in the name of someone with the same last name as Defendant—"Alexander."
4. A trash pull for 400 Saint Joseph Street resulted in the discovery of cocaine residue and products related to the sale of illegal narcotics.

These facts established a nexus of an individual possibly involved in the sale of cocaine, a residence associated with that person, and cocaine residue and materials related to cocaine sales found in a trash can outside that residence. Hence, these facts form a substantial basis for the magistrate's finding of probable cause. See United States v. Crawford, 552 F. App'x 240, 246-47 (4th Cir. 2014) (per curiam) (finding substantial basis for magistrate's finding of probable cause where there was a nexus of Defendant's involvement in the drug trade, Defendant's connection to the residence searched, and cocaine found in a trash pull); Montieth, 662 F.3d at 664-65

(finding substantial basis for magistrate's finding of probable cause where tip leading to trash pull resulted in discovery of evidence of marijuana trafficking and linked Defendant to the residence); United States v. Mitchell, No. 2:10-CR-562-DCN, 2011 WL 3418401, at *1, *7-8 (D.S.C. Aug. 3, 2011) (finding substantial basis for magistrate's finding of probable cause where warrant was primarily based upon trash pull that corroborated tips that illegal drug activity was taking place at the residence where the trash pull was performed). Though these facts would not create certainty that evidence of illegal activity would be found inside 400 Saint Joseph Street, certainty was not required. Instead, such facts would cause a reasonable person to believe, based upon the totality of the circumstances, that the residence was likely being used in some manner related to the sale of illegal drugs and that evidence of such would be found inside.

Though Defendant's connection to 400 Saint Joseph Street was tenuous, this fact does not defeat the magistrate's finding of probable cause. A magistrate considering a warrant application must consider the totality of the circumstances to determine whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983). Here, the magistrate could link Tashia Steele, Defendant's girlfriend and suspected business associate, to the residence based upon the Accurint search and the presence at 400 Saint Joseph Street of the medical company's van which was associated with Tashia Steele. Coupling this information with the nature of the items found in the trash pull would lead one to reasonably believe that a search of 400 Saint Joseph Street would likely result in the discovery of contraband or evidence of a crime. The magistrate was appropriately concerned with the place to be searched and what

8

Case 1:15-cr-00103-JAB   Document 27   Filed 09/22/15   Page 8 of 13

might be found there, and not influenced by whom the evidence might be used against. Cf. Zurcher v. Stanford Daily, 436 U.S. 547, 556, 98 S. Ct. 1970, 1976-77, 56 L. Ed. 2d 535 (1978) ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought."). "Search warrants are not directed at persons; they authorize the search of 'place[s]' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized." Id., 436 U.S. at 555, 98 S. Ct. at 1976.

Additionally, at the hearing, Defendant argued that the results of the field test should be discarded without further support. However, there is no requirement that substances suspected to be illegal drugs be subjected to tests more rigorous than a field test. Once again, the relevant inquiry for a magistrate is whether there is probable cause to believe that evidence of criminal activity would be found at the location to be searched based upon the totality of the circumstances. Though one could conceive of a situation where something more than a field test might be necessary in order to reach the probable cause threshold, this is not such a case. See Mitchell, 2011 WL 3418401, at *3, *7 (finding substantial basis for magistrate's finding of probable cause where substances in trash pull were only field-tested and tested positive for cocaine). Additionally, because the suspected cocaine residue was found with other items closely associated with the illegal sale of narcotics, the magistrate had little reason to question the result of the field test.

In summary, the magistrate's finding of probable cause was supported by a substantial

9

basis. Therefore, based upon the totality of the circumstances, the Court finds that the warrant was validly issued. Therefore, the search conducted pursuant to the search warrant complied with the Fourth Amendment.

  B.  The Good-Faith Exception

Even if the warrant was invalid because, as Defendant argues, there was not a substantial basis for the magistrate's finding of probable cause, the evidence seized during the search would also be admissible under the good faith exception established by United States v. Leon, 468 U.S. 897, 926, 104 S. Ct. 3405, 3422, 82 L. Ed. 2d 677 (1984). "[U]nder Leon's good faith exception, evidence obtained pursuant to a search warrant issued by a neutral magistrate does not need to be excluded if the officer's reliance on the warrant was 'objectively reasonable.'" United States v. Williams, 548 F.3d 311, 317 (4th Cir. 2008) (quoting United States v. Perez, 393 F.3d 457, 461 (4th Cir. 2004)). Such evidence is admissible because the exclusionary "rule's [deterrence] purposes will only rarely be served by applying it in such circumstances." Leon, 468 U.S. at 926, 104 S. Ct. at 3422.

The Fourth Circuit has explained that an officer's reliance will not be considered objectively reasonable under any of the following four circumstances:

> First, where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;
>
> Second, where the magistrate acted as a rubber stamp for the officers and so wholly abandoned his detached and neutral judicial role;
>
> Third, where a supporting affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and

10

Case 1:15-cr-00103-JAB   Document 27   Filed 09/22/15   Page 10 of 13

> Fourth, where a warrant is so facially deficient—*i.e.,* in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

Williams, 548 F.3d at 317-18 (internal citations, quotation marks, and brackets omitted).

However, none of these four circumstances are applicable here. First, there is no evidence that Investigator Roth was dishonest or showed reckless disregard for the truth in the preparation of his warrant application. At the hearing, cross-examination of Investigator Roth revealed that he had omitted minor details from his warrant application, namely the fact that Calzado and Crowl had made earlier statements that may have contradicted their later statements. However, this omission is not of the kind that raises concerns that the magistrate was misled. "An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990). Additionally, the warrant application itself included reasons that would allow one to infer that Calzado's statements were reliable. The fact that Calzado admitted to a crime in his statement strengthened its reliability. United States v. Harris, 403 U.S. 573, 583, 91 S. Ct. 2075, 2082, 29 L. Ed. 2d 723 (1971) ("Admissions of crime . . . carry their own indicia of credibility . . . ."). Additionally, Calzado's tip regarding Steele's involvement in the sale of cocaine was corroborated by the items found as a result of the trash pull.

The remaining three circumstances described above are also absent from this case. No basis for the magistrate acting as a rubber stamp has been presented. The warrant was not so lacking in indicia of probable cause as to render belief in its existence entirely

unreliable. The test for this third circumstance "is a less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause in the first place." Williams, 548 F.3d at 318 n.6. As discussed in Section II.A above, the magistrate's finding of probable cause was supported by a substantial basis. Hence, the warrant was also not so lacking in indicia of probable cause as to render belief in its existence entirely unreliable. Finally, the warrant particularized the place to be searched and the things to be seized. [See Doc. #24-1 at 1, 3-5].

Given the above, even if the magistrate's finding of probable cause did not have a substantial basis, as Defendant argues, the officers were justified in relying upon the warrant because doing so was objectively reasonable. Therefore, the evidence would be admissible under the Leon good faith exception.

III. CONCLUSION

In sum, the Court finds that, based upon the totality of the circumstances, the magistrate's finding of probable cause was substantially supported by the facts alleged in the affidavit and application for the search warrant. Additionally, even if the magistrate's finding did not have a substantial basis, as Defendant argues, the officers' reliance upon the warrant was objectively reasonable. Therefore, the Court concludes that, in this instance, the search complied with the Fourth Amendment and the evidence seized pursuant to that search need not be suppressed.

IT IS THEREFORE ORDERED that Defendant's Motion to Suppress [Doc. #17] is DENIED.

This the 22nd day of September, 2015.

United States District Judge